All right, our fourth case for this morning is United States v. Trent. Mr. Bell. Thank you, Your Honor. Excuse me. Can I get a drink? Please, go ahead. Thank you, Your Honor. May it please the Court, I'm Murray Bell. I have the privilege of representing Mr. Trent in this matter. In Mr. Trent's trial, the key issue was whether or not he was in the chain of distribution of a bit of heroin that came through the hands of Curtis Lamb and then went to the hands of Kyle Hall, who subsequently prepared it and injected it into his own friend, causing the death of that friend. Mr. Trent admitted he was a drug dealer. Mr. Trent admitted he had distributed blood drugs. He got on the stand and testified. The issue was whether the government could tie him to the chain of evidence. The only evidence they had that tied him to the chain, that specifically tied him to the chain, were the testimony of the two other persons who were clearly in the chain of distribution. Mr. Hall was able to say that he had made contact with Mr. Trent that day. Mr. Curtis, when he was first interviewed, said he got the drugs from a guy by the name of Tom. By the name of what? I'm sorry? What name? Name. Tone. Mr. Tone. That's all he said, was Tone. Officers didn't believe him, and so they pressed him, pressed him, told him, inferred that they thought Trent was the guy. We end up having him testify on the stand that he got the drugs from Trent. We wanted to cross-examine them to the extent to show that they were facing a mandatory minimum of 20 years, both of them, because of the death and that because of their cooperation they could get below that number. Well, just to clarify, so Trent sold the heroin to whom? Well, the allegation is that we denied that Trent sold it to Curtis Land or provided it to Curtis Land. Curtis Land testified, and so did Kyle Hall testify. Curtis Land gave it to Mr. Hall. Mr. Hall then processed it and injected it into his friend who died. That part of the chain is clear, and it has proven at trial. The question is whether Curtis or whether Trent was the beginning of the chain. Why did he die? I mean, Corzette, why did Corzette die? It was a drug overdose. It was a heroin overdose. Well, I know. A lot of people take heroin. They don't die. Why did he die? Well, we don't have any other evidence other than that. Was there medical testimony? Yeah, the autopsy said that it was because of the heroin overdose. Why did he? Most people do not. What do you mean overdose? He just had the normal amount, didn't he? Well, I don't know what the normal amount is. Well, you should know. Well, I don't use it. I don't know. Well, you don't know. Is there any medical evidence in the case? Yes. He had. They put him some. Didn't he take the normal amount of heroin, not some? But people respond differently. If you've been taking heroin for a long time, you're going to have a higher tolerance for heroin in your system than if you're a first-time user where the same dose might have dire consequences. How long had Corzette been taking heroin? He had been using it for some period of time. But since he was in high school, he was informed. So he's an experienced heroin consumer. He was how young? What is it that caused his death? The autopsy indicates that death is caused by the heroin suppressing the pulmonary system. Why does he die and other people, most people who take the same quantity of heroin, do not die? I can't answer that. Well, I think that's unanswerable. Was there no medical evidence about that? There was. Was he susceptible in some way? There was no evidence. There's no evidence about that. There was evidence that he had in his system an amount that has been shown to be fatal. No, it hasn't shown to be fatal. It's the normal amount that the heroin users imbibe. Why does it kill this person, not another person? I can't answer that question. Can I get back? I think we're going through all of this because you're trying to tell us why the district court's restriction on the testimony was prejudicial to you, and I actually don't see that. The district court allowed you to say that these two cooperators or these two witnesses were facing substantial sentences, and she even invited you to propose an alternative word to substantial, if that didn't sound big enough somehow. But there was no alternative suggested. And it's hard for me to imagine on this record a jury responding differently to 20 years than it responds to substantial. These are heroin dealers. The jury's going to have its views about that. And they know that these people are facing substantial sentences, which might influence their testimony. My concern is with the word substantial. Substantial is subjective. But the point you're trying to get across is that it's substantial enough that people are going to color their testimony. That's what you wanted the jury to think. And the jury hears that. What's important is to whom were you using the word substantial. We have an audience of 14 people who likely have never spent a day in jail, and my suspicion is any of them would think they've sustained a substantial sentence if they had to spend a day in jail. So that means they're going to give these, your position, the benefit of the doubt, because they're going to think even a 2-year sentence would be pretty substantial and maybe we should be skeptical about these people. Right. But they don't then see the magnitude of the incentive to paint the cooperating witnesses' testimony. That just strikes me on the margins. You know, I really, you know, this district judge thinks that it's better not to nail it down to the exact number of years, and the point is to undermine the testimony, and you've just said that maybe it would be undermined if she had said it was a 5-year sentence or a 15-year sentence.  Like I said in my brief, if a jury heard somebody was going to get $25 to testify, they'll think one thing. If they hear they're going to get $10,000, well, that changes their perspective of what the incentive is. And what if the jury is told you're going to get a substantial amount of money? I mean, it's the same thing. I mean, this jury, it seems to me we're in the realm of district court discretion here. We're not in a Sixth Amendment situation. The idea of impeachment from the sentencing benefit is clearly in front of the jury. Well, in 1995, this court, in the case of United States v. Akronaid, I think is the correct pronunciation, stated the jury should have enough evidence to conduct a discriminating appraisal of the witness' motives and bias. And I think if you tell this jury 20 years as opposed to substantial, which they may think is one, you give some better information so they can have a discriminating evaluation of what's going on. Well, seeing 20 years doesn't mean 20 years. Well, in federal court it means. Well, it doesn't mean 20 years, but it's more in state court. However, the Bureau of Prisons can also, with the Justice Department, knock down that 20. Only 15%. But I understand that. Believe me, I've had it happen where I sentence somebody to virtually life imprisonment and they, because of cooperation of the defendant, knock the sentence down to virtually nothing. Well, that's the whole point. That's the whole point I'm making. These guys are getting their sentence reduced below this mandatory minimum for cooperation. But substantial would have met any burden that was necessary. They received a substantial sentence. It wasn't carried out, but that's what he got. Well, our position is that the jury can't make a discriminating analysis without really knowing what we're talking about. But aren't you really making the jury the set concern? I don't believe that. I understand the concern. What I find is difficult is that we're laying on the defendant. I mean, it might be fine, but, I mean, it isn't the law. You know, the judge does the sentencing, not the court. Correct. And the reason that the judge didn't want the jury to hear this was, I'm into my overtime, is the reason the jury didn't want the judge to hear it is because they don't want to know what the sentence could be or would be. I understand that. I think I'll reserve and address that. And if Judge Posner has further questions, obviously you can ask them. I'll come back to that, Judge Posner. Yes. Mr. Walters. Good morning, Your Honors, and may it please the court. Greg Walters on behalf of the United States. And, Judge Wood, you are correct that we're outside of the Sixth Amendment. That's not implicated here because he was given the opportunity to bring out the motive, credibility, or potential biases of these witnesses by using you're facing a substantial mandatory amendment. Wouldn't it have been much easier just to say 20 years? I mean, honestly, here we have this issue on appeal because she decides to substitute the word substantial. And, honestly, you know, this jury knows that this is a heroin case, right? There's no question about that. And it's hard for me to believe that they'd be so swept away by the notion of 20 years that they wouldn't evaluate the evidence just as dispassionately as they do hearing the word substantial and maybe more accurately. And I agree that a reasonable jury. Well, aren't jurors ever told what the sentence will be or can be if they convict? Well, these are for the witnesses, right? These aren't the defendant. The 20 years is what the witnesses are going to get. Correct, Your Honor. Yeah. But do judges tell jurors what potential sentences are? For a witness? For anybody. Well, not for a defendant, but for witnesses. But I think it gets to the point of the broad discretion a court has. But do judges do that? Judges do not. But I've had jurors. Yes, I know. That's the problem. I mean, not a problem. No. That's how our system works, right? The judge does the sentencing. If he tells the jurors, you know, the sentence could be this, could be that, could be the other, then the jurors end up as the sentencers. Because if they don't like the sentence, they won't convict the guy. I mean, there is a concern. But this is a prediction of what the witnesses are going to get. This witness is on the stand saying, I bought heroin from Trent. And the jury hears he's going to get a substantial reduction in the otherwise mandatory minimum sentence that he would have because he's helping the government out. So he's not being sentenced in this proceeding. He's going to be sentenced in some other proceeding, right? Correct, John. So you're in a situation where the judge could either say, there's a mandatory minimum of 20 years on this behavior, and this witness is facing that, but he can get less because he's helping out the government. Correct, Your Honor. But the judges don't do that. Some judges do. Telling the years? Some judges do allow for the cross-examination to elicit the potential penalty that the defendant's facing absent cooperation. Other judges have not. But that's rare, isn't it? Most judges don't do that, do they? Most judges do not want to have the years of a sentence recited to a jury. For a witness? For anybody. Because once the jurors are told, you know, 20 years this, that, it doesn't matter who it's for. Now they become very curious, what's the sentence going to be in this case? I agree, Your Honor. There are many judges who do not. My point is that there are judges who do, though. Well, there are judges who do everything. But I don't think it's a common practice. I don't think it's good. My argument. Unless you want jurors to be sentencers. I agree it's not a good practice. Well, your argument is that it was fine when this judge didn't. Right. It's within the broad discretion of the court. I would say that if the sentence is brought out, then there's a limiting destruction that goes along with that. Well, I was worried by the statement she made about the mandatory minimum. Because then the jurors begin to think, well, wait, what is the mandatory minimum? I mean, it's a very delicate process dealing with juries, either telling them too much, too little, stimulating their interest. Then they go out, you know, maybe they do some Google research. Ask Google, what's the mandatory minimum? And they get all sorts of information. I thought she didn't actually mention that. I thought she just allowed the fact to be brought out that in exchange for their testimony, the government was going to advocate for a lesser sentence. But did she ever put a number of years? The term mandatory minimum is in there. She allowed a defense counsel to use the term, quote, substantial mandatory minimum. You are facing a substantial mandatory minimum. But no number of years attached to it. Correct. And I think the point is the benefit that a cooperating witness expects, can reasonably expect to get, is what the government is going to ask for off a sentence. And that is unknown in this case when they're testifying. It's not some abstract number of 20 years that the benefit ultimately for a witness could be very little. Or it could be substantial. And a good example is if we get into the context of mandatory life in prison. I've had witnesses face mandatory life in prison get a substantial reduction to 40 years in prison. There's not a lot of difference in a jury's mind between life in prison and 40 years in prison, especially when that witness is 40, 30, 40 years old. And so he used the term nebulous to not be able to attach 20 years to the potential sentence they're facing in absent cooperation. It's equally nebulous to throw out before a jury 20 years but not know the expected benefit. And the government wouldn't, hadn't told these witnesses that you can expect X off your sentence based on your cooperation. These were not C agreements. And so the jury is then left with 20 years, not sure how much you're going to come down from that, and that also tells the jury what this defendant, Mr. Trent, is facing. And so I think the judge. And so it's to avoid all that. It's to avoid a jury nullification issue without putting something completely in context of exactly what benefit are they going to get, which was unknown at the time of trial beyond they were expecting a reduction, Your Honor. That's what the witness testified. That's all they could testify to because they had not been told based on your cooperation you can expect X percent. He agreed that he was testifying to get his sentence reduced, and he agreed to that. Right. And one of the witnesses, even Curtis Land, told the jury, I don't think anybody would want to serve the mandatory minimum I'm facing. So, no, were years attached? Absolutely not. What I find most troublesome about the government's case is the paucity of medical evidence. Why did Corzette die? Well, I don't know. So thousands, tens of thousands of people are taking the same quantity of heroin day after day, maybe, and they're fine. So what's the matter with Corzette? But based on that rationale, though, no one would ever die. Pardon? No, I assume, without knowing because there's no evidence. There was evidence. I assume there are people who have greater susceptibility. And then the question is whether Trent ought to be blamed if, with no knowledge of who was going to take this, he happened to have the misfortune to have it, not by a direct sale by him, but through these intermediaries, it ends up with someone who is especially susceptible. Now, Trent should be blamed. Pardon? Trent should be blamed because Trent was a regular supplier of Kyle Hall, who would at times use two people within his conspiracy, Curtis Land and the individual we identified as JB in our brief, to distribute for him. So there was evidence that he was a regular supplier to Kyle Hall. No, of course, I know. But the question is, do we know anything about Corzette's susceptibility to heroin? Compared to Trent's other customers. What I do know, I mean, first, a medical examiner did testify. And secondly, there was alcohol involved before taking the heroin. So what is common in these heroin cases, and I would guess is common here, is mixed intoxication, which comes back to the standard in Burgess against the United States about but-for causation, that but-for the heroin that he would have lived. And I think from my reading of the medical examiner's testimony that the jury could make that determination. They were instructed on but-for causation by the district court. And ultimately, there wasn't. But if Trent sells heroin, which is then resold in small quantities or average quantities and so on, and the recipient, Corzette, would be fine, but Corzette is a drunk also and as a result dies, is that really to be blamed on Trent? I think so, because you are taking the risk as a heroin distributor that the people you are selling to have drug problems. Look, everybody who sells food is taking a risk that the consumer will choke on it, right? They are. You sell a chicken, it has bones in it. If the purchaser is careless, he may get one of those bones stuck in his throat. But usually we would blame the customer. We wouldn't blame the chicken or the seller. So I'm just curious about the fact most people take heroin and it's fine and they're fine. And every once in a while, rarely, someone dies. And I'm just curious, what is it that causes the death? Is that something peculiar to the habits or the physiology of the recipient? Or is this something inherent in the sale of heroin that one out of a hundred little packets is lethal for some reason, a defect? I think what can be unique is this is not being made in a laboratory by Merck. The purity level is exactly the same every time or will affect the same person exactly the same every time. And I don't know about this particular case about the exact components of the heroin, but you can have heroin at times that's laced with fentanyl. You can have it laced with... Oh, sure. Look, if there were fentanyl involved, yes, fentanyl is lethal. And if, for example, Trent produces heroin at different purities, different quantities and so on, so some people are getting something very impure and very dangerous, that would make it straightforward. I'm just wondering about a case in which all the heroin he sells is the same. It's harmless to you, the consumer, unless you're doing something else which is foolish. You're taking fentanyl also or you're drunk or you're sick, then you're very vulnerable. But if you're just a distributor at the top end like Trent and you have no idea who you're selling to and you're just selling a uniform quantity of generally harmless heroin, I'm just wondering why I should get the 25 years or whatever. May I respond? Please. And then I'll let you sit down at that point. Judge, I would disagree with your... He's not the manufacturer. Even in Mr. Trent's testimony when he took the stand, he talked about how he would go across the river to meet his heroin supplier. So there's a chain of distribution that goes above Mr. Trent. So I think any time there's a risk with heroin that there is going to be an overdose. So you say he's not buying a uniform product or he's not acquiring a uniform product or creating a uniform product. I'm saying he's not the manufacturer. That's what I can tell you. Okay. Thank you very much, Mr. Walters. Mr. Bell, I think you had... Thank you. I'll certainly give you a minute. Thank you. If you need more, if Judge Posner has questions. I wanted to address Judge Posner's question about telling juries about what the sentence will be. There are states, the state of Iowa where I practice regularly, and you're always able to tell the jury what the sentence of the witness could be and if they can draw from that what the sentence of the defendant is. The Ninth Circuit Court of Appeals, I quote a case that suggests that they allow it. The Ninth Circuit is not exactly... I appreciate your reference to the Ninth Circuit. It's too far away. Well, I've listed four or five circuits. Eighth, which is just across Mississippi here. They allow that. To address your question of why Mr. Corzette died, frankly, from my perspective, it's because Hall had two opportunities to address medical issues with him. When he saw him pass out initially and four hours later when he went back and checked him, he was still passed out, he took no action. And he could have taken action on either two of those events and could have saved a life. Was he punished? He was one of the witnesses who was facing a mandatory 20. So he... Yeah. Now, I think he ended up with about 13 years, as I recall, off the top of my head. So that counts as punishment, yeah. 13 years. Yes, I believe it was close to that, 13, 14. Okay. Well, I think we will take the case under review. You took this appointment, did you not? Yes, Your Honor. We appreciate very much your help to the court and to your client. Thanks as well to the government. Thank you, Your Honor.